IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DEBRA COLLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:17CV00003 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **DICKENSON COUNTY SCHOOL** | ) | By: James P. Jones |
| **BOARD, ET AL.,** | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*John P. Fishwick, Jr. and Monica L. Mroz, Fishwick & Associates PLC, Roanoke, Virginia, for Plaintiff; Jim H. Guynn, Jr., Guynn & Waddell, P.C., Salem, Virginia, for Defendant Dickenson County School Board, Haydee Robinson, John Skeen, Don Raines, and R.E. Nickles; Melissa W. Robinson and Johneal M. White, Glenn Robinson Cathey Memmer & Skaff, PLC, Roanoke, Virginia, for Defendants Susan Mullins and Rocky Barton.*

In this employment discrimination case by a former public school teacher under both the Equal Pay Act and 42 U.S.C. § 1983, as well as a pendent state claim of breach of contract, the defendants moved to quash a subpoena duces tecum served by the plaintiff on the school board's attorney, relying upon the attorney-client and work-product privileges.[1] The motions were referred to the magistrate judge, who denied them on the ground that the defendants had not met

---

[1] The defendants consist of the school board, its five individual members, and the school superintendent. Two of the school board members are separately represented in this case, and have filed a separate motion to quash and separate objections, but all defendants have a common position on the present issues. The school board and its members, as the clients, have standing to assert the privileges asserted here. *United States v. Under Seal* (*In re Grand Jury Proceedings #5*), 401 F.3d 247, 250 (4th Cir. 2005).

their burden to show that the documents in question were in fact subject to the privileges, and had simply made the conclusory statement that they were protected by the privileges. Mem. Order 6, Nov. 22, 2017, ECF No. 40.[2] The defendants filed timely objections to the magistrate judge's decision. I then directed the defendants to submit the documents in question for the court's in camera review. Op. & Order 2, Dec. 18, 2017, ECF No. 44. The documents have been submitted and the objections to the magistrate judge's Memorandum Order are now ripe for decision.

I.

A magistrate judge's ruling as to nondispositive matters may be reversed only upon a finding that the order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). An order is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Minyard Enters., Inc. v. Se. Chem. & Solvent Co.*, 184 F.3d 373, 380 (4th Cir. 1999) (internal quotation marks and citation omitted). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of

---

[2] The defendants submitted to the magistrate judge a Privilege Log which described each document claimed to be privileged by type of document (such as "Email W/Attachment"), date, author, recipient, and a very limited description of subject matter (such as "Salary"). Br. Supp. Mot. Quash Ex. 3, ECF No. 33-3. There are 23 separate documents listed on the Privilege Log.

2

procedure." *United Mktg. Solutions, Inc. v. Fowler*, No. 1:09-CV-1392-GBL-TCB, 2011 WL 837112, at *2 (E.D. Va. Mar. 2, 2011) (citation omitted).

Because federal law claims are made in this case, the privileges asserted here are governed by "the principles of the common law as interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501 advisory committee note to 1974 enactment; *see Virmani v. Novant Health Inc.,* 259 F.3d 284, 286 n.3 (4th Cir. 2001) ("We agree with our sister circuits that in a case involving both federal and state law claims, the federal law of privilege applies.").

The attorney-client privilege applies when the person claiming the privilege has, as a client, consulted an attorney to secure legal services, and in connection with those services, information intended to be confidential has been communicated. *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984). The essence of the privilege is protection of what was expressly made confidential or should have been reasonably assumed by the attorney as so intended. *United States v. Jones*, 696 F.2d 1069 (4th Cir. 1982).

In the corporate context, the protections of the attorney-client privilege extend to employees. *Upjohn Co. v. United States*, 449 U.S. 383, 391-95 (1981). The attorney-client privilege protects intra-corporate communications transmitting legal advice to employees, *see Deel v. Bank of Am.*, 227 F.R.D. 456, 460 (W.D. Va. 2005), and communications between employees in preparation for seeking

3

legal advice, *see Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 38-39 (D. Md. 1974). Only if the third party is a "stranger" to the entity is the privilege waived. *Deel*, 227 F.R.D. at 458 (citation omitted).

The work-product doctrine protects materials prepared in anticipation of litigation. *Collins v. Mullins*, 170 F.R.D. 132, 134 (W.D. Va. 1996). The probability of litigation must be substantial and imminent, or fairly foreseeable at the time the document was prepared. *Id.* The privilege encompasses both fact work product and opinion work product. Opinion work product contains an attorney's mental impressions, conclusions, opinions, or legal theories. *Better Gov't Bureau Inc. v. McGraw* (*In re Allen*), 106 F.3d 582, 607 (4th Cir. 1997). Fact work product, which consists of documents that do not contain the attorney's mental impressions, is not entitled to absolute protection. *Id.*

An existing attorney-client relationship does not alone warrant a presumption of confidentiality. *Id.* The circumstances in which the communication was made must show the intention of secrecy. *In re Grand Jury Proceedings*, 727 F.2d at 1356. Communications intended to be conveyed to others are not entitled to attorney-client protection. *Id.* at 1357.

II.

The plaintiff in this case, Debra Collins, worked as supervisor of instruction for the Dickenson County, Virginia, public school system from 2007 until her retirement in 2015. She contends that during her employment there was an unlawful disparity between her salary and that of comparable male employees. She alleges that at the time of her pending retirement in 2015, she brought this issue to the attention of the Dickenson County School Board (the "School Board") and that Scott Mullins, the lawyer for the School Board, indicated to her a range of compensation the School Board would pay her in order to correct the eight years of disparity. She claims that she agreed to any figure within that range but that in July of 2015 the School Board decided not to offer her any compensation. This lawsuit followed. The defendants deny any liability to the plaintiff.

The subpoena served by the plaintiff on Mullins, the School Board's attorney, requested production of the following documents that are the subject of the motions to quash:

1. All documents, including but not limited to emails, correspondence, notes, records, and/or memoranda exchanged between [Mullins] and/or anyone in [his] office and Reba McCowan, Clerk of the Dickenson County School Board, regarding Debra Colley from January 1, 2015[,] through August 1, 2015.

   . . . .

4. All documents, including but not limited to emails, correspondence, notes, records, and/or memoranda exchanged between [Mullins] and any

employee or representative of the Dickenson County School System (including but not limited to the Superintendent and School Board members), regarding Debra Colley and/or compensation for Debra Colley from January 1, 2010[,] through August 1, 2015.

5. All documents including but not limited to emails, correspondence, notes, records, and/or memoranda exchanged between employees or representatives of the Dickenson County School System that [Mullins was] copied on or that were provided to [Mullins], regarding Debra Colley's employment and/or compensation from January 1, 2010[,] through August 1, 2015.

Br. Supp. Mot. Quash Ex. 1, Ex. A, ECF No. 33-1 (footnote omitted).[3]

Based upon my in camera review, the documents in question are all dated following a letter of April 30, 2015, from plaintiff Colley to Superintendent Robinson stating her claim of disparate salary treatment and requesting "redress of financial suffering." Def[s]. Mullins & Barton Reply Br. Supp. Mot. Quash Ex. A, ECF No. 38-1. The documents all relate to Colley's claim. They include emails to and from Mullins and Robinson and Reba McCowan, the Clerk of the School Board, as well as emails from Mullins to the School Board members collectively. All of Mullins' emails contain a notice that they are a "confidential and privileged communication," and in some instances the subject line of the email contains similar language. Three of the emails were copied to Brenda Greene, who is represented to be a paralegal in Mullins' office.

---

[3] The defendants do not object to two classes of documents to be produced by Mullins, numbered 2 and 3 on the subpoena, which request all communication between Mullins and two representatives of the Virginia Retirement System concerning the plaintiff. *Id.*

In chronological order, the documents show Mullins' receipt and initial advice to the School Board concerning Colley's claim; his work in compiling evidence about the validity of the claim; his advice as to applicable law and the School Board's possible alternatives in resolving the claim; and his exploration and advice concerning a possible settlement of the claim, including the drafting of a potential severance agreement with Colley.

In her opposition to the motions to quash, Colley argued that the subpoenaed documents are not protected by the attorney-client privilege or work-product doctrine because: (1) the documents were disclosed to third parties and not intended to be kept confidential; (2) Mullins was acting solely as a negotiator and not as a lawyer; (3) the facts underlying the emails are not protected; and (4) Colley is entitled to work product not prepared in anticipation of litigation. I will address each of these arguments in turn.

Mullins's intention to keep the subpoenaed documents confidential is obvious for most of the communications. There is no indication that any of the emails were intended to be conveyed to an unrelated third party. Mullins explicitly warned the School Board not to share the contents of the emails with anyone else and that doing so would result in losing the attorney-client privilege.

Despite Colley's argument to the contrary, the fact that the pay disparity issue was discussed with her and she was provided salary data in those discussions,

does not constitute a waiver of the privilege with respect to all other attorney-client communications on the issue. For example, attorneys regularly share with opposing counsel their decisions to take or not take certain action. This does not break the attorney-client privilege for communications made in confidence that led them to such decisions.

Colley argues that any communications to Superintendant Robinson and School Board Clerk McCowan are not protected because Robinson and McCowan are not members of the School Board and are therefore not entitled to the privileges. This argument is misguided. Robinson and McCowan were employees of the School Board. Robinson was required by law to attend School Board meetings. Va. Code Ann. § 22.1-69. McCowan, as Clerk of the School Board, was the custodian of records and would have access to all pertinent information. Va. Code Ann. § 22.1-77. "[I]t is only natural that these employees would have the relevant information needed by . . . counsel if he is adequately to advise the client." *Upjohn*, 449 U.S. at 391. Therefore, the communications between Mullins and these two individuals are protected.

Colley next argues that Mullins was acting as a negotiator or business advisor and therefore, his communications pertaining to such negotiations are not privileged. In order for the attorney-client privilege to apply, an attorney "must be acting as an attorney and not simply as a business advisor." *Henson v. Wyeth*

*Labs., Inc.*, 118 F.R.D. 584, 587 (W.D. Va. 1987) (finding that work-product and attorney-client privileges did not apply to memoranda that contained information addressing strictly business decisions, reflected ongoing business developments, and failed to contain specific legal advice). Unlike *Henson*, the documents in this case demonstrate that the School Board was seeking legal advice from Mullins, and that Mullins prepared work product in conjunction with this advice. These were not documents simply "addressing business decisions" or "used in factoring positions to be taken in the market place." *Id.* at 586-87. As part of his duties, he may have attempted to facilitate a resolution with Colley on behalf of the School Board, but Mullins was clearly providing legal services to the School Board regarding the claim, and not acting purely as a non-attorney negotiator.[4]

Colley's final two arguments are related. She contends that the emails described as "salary comparisons" on the Privilege Log, are not protected by the attorney-client privilege. To be sure, the "attorney-client privilege protects only the disclosure of client communications, and not the disclosure of any underlying facts." *Better Gov't Bureau*, 106 F.3d at 604. The facts at issue here, however, are

---

[4] The other cases that Colley cites in support of her contention that Mullins was acting as a negotiator can be distinguished for the same reasons. *See Bogan v. Nw. Mut. Life Ins. Co.*, 145 F.R.D. 640, 641 (S.D.N.Y. 1992) (holding that memorandum written by insurance company's attorney describing meeting in which attorney's sole function was to eliminate conflict between insurance agents was not privileged); *Comercio E Industria Cont'l, S.A. v. Dresser Indus., Inc.*, 19 F.R.D. 513, 515 (S.D.N.Y. 1956) (finding that the attorney-client privilege was not available when attorney was "acting as the client's alter ego in [the] business transactions."). In both of these cases, the attorney's role clearly fell outside the scope of legal advisor.

information prepared by Mullins or by McCowan at Mullins's request, as part of his legal advice to the School Board. They are work product. Some of these attachments are fact work product and others contain legal opinions or impressions concerning Colley's claim. The question is whether this work product was prepared in anticipation of litigation. If it was, then it is generally not discoverable.

Colley contends that the defendants have failed to meet their burden to show that the documents were prepared in anticipation of litigation. She argues that the documents were actually prepared to assist in negotiations to correct the pay disparity, and because it is alleged that the School Board told her it would correct this disparity in April 2015, the probability of litigation was not imminent or fairly foreseeable for the period covering the subpoenaed documents. I disagree. From at least April, it was clear to the School Board and Mullins that Colley was asserting a claim against the School Board. She had written a formal letter to Robinson requesting that the School Board correct the alleged pay disparity. She had retained an attorney and "attended a [School Board] meeting on the issue with her lawyer present," Reply Br. Supp. Mot. Quash 6, ECF No. 39, which certainly must have indicated that litigation was fairly foreseeable. Accordingly, I believe that the documents include protected work product prepared in anticipation of litigation.

Even factual work product prepared in anticipation of litigation can nevertheless be discoverable upon a showing of both a substantial need and an inability to secure the substantial equivalent of the documents by alternate means without undue hardship. Fed. R. Civ. P. 26(b)(3); *see Under Seal*, 401 F.3d at 250. Colley argues that she has a substantial need for the salary comparisons which the Privilege Log indicates were attached to certain of the emails, and cannot get a substantial equivalent without undue hardship. However, Colley already has some salary comparisons previously provided to her and she can obtain any other relevant information about School Board employees through the normal discovery process, even if she cannot obtain the work-product material of the School Board's attorney.

## III.

Under the circumstances, because the magistrate judge did not have access to the documents in question, and based upon the in camera review of those documents, I find that the magistrate judge clearly erred in denying the motions to quash. Accordingly, it is **ORDERED** as follows:

1. Defendants' Objections, ECF Nos. 41, 43, are SUSTAINED;

2. The magistrate judge's Memorandum Order, ECF No. 40, is VACATED;

3. The Motions to Quash, ECF Nos. 32, 34, are GRANTED as to requests numbered 1, 4, and 5; and

4. The Subpoena to Produce Documents dated September 21, 2017, directed to Scott Mullins, Esquire, is QUASHED as to requests numbered 1, 4, and 5.

ENTER: April 18, 2018

/s/ James P. Jones
United States District Judge