## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DEBRA COLLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:17CV00003 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **DICKENSON COUNTY SCHOOL** | ) | By: James P. Jones |
| **BOARD, ET AL.,** | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*John P. Fishwick, Jr., and Monica L. Mroz, Fishwick & Associates PLC, Roanoke, Virginia, for Plaintiff; Jim H. Guynn, Jr., Guynn & Waddell, P.C., Salem, Virginia, for Defendants Dickenson County School Board, Haydee Robinson, John Skeen, Don Raines, and R.E. Nickles; Johneal M. White, Glenn Robinson Cathey Memmer & Skaff, PLC, Roanoke, Virginia, for Defendants Susan Mullins and Rocky Barton.*

In this employment discrimination case by a former Virginia public school employee, the plaintiff asserts claims against the local school board, the school division superintendant, and the individual members of the board, based upon the federal Equal Pay Act, Title IX, and 42 U.S.C. § 1983, as well as breach of contract under state law. The defendants have filed motions for summary judgment, which have been fully briefed and argued. For the reasons that follow, I will deny the motions in part and grant them in part and allow the remainder of the case to proceed to jury trial.

# I. BACKGROUND.

The plaintiff, Debra Colley, was employed by the defendant Dickenson County School Board (the "School Board" or "Board") from 2007 to her retirement in 2015, as one of the small group of supervisors in the school division's Central Office, all reporting to the division's superintendent of schools. In April of 2015 Colley announced her intention to retire. Until that time, she believed that all Central Office supervisors received "around the same rate of pay." Pl.'s Mem. Opp'n Mots. Summ. J. Ex. K 4, ECF No. 96-11. Shortly thereafter, after learning to the contrary, she complained to the School Board that her salary was "far less than other central office peers despite comparable supervisory duties, expectations, and experience in current roles," and requested "redress of [her] financial suffering" through "correction of such an error or oversight." *Id.* at Ex. FF, ECF No. 96-32. According to Colley, the Board members appeared unaware of the disparity, and "clearly surprised." *Id.* at Ex. B, Colley Dep. 85, ECF No. 96-2. Certain members of the Board expressed interest in correcting any disparity, and the Board's staff developed options for a financial settlement with Colley, which were discussed with her. Eventually, however, the Board took no action on Colley's request and she voluntarily retired as scheduled on July 31, 2015. This lawsuit was thereafter filed on March 7, 2017.

In her Amended Complaint, Colley sues the Board and all of its five members — Susan Mullins, Rocky Barton, John Skeen, Don Raines, and R.E. Nickles — as well as the division superintendent, Haydee Robinson, in their individual capacities. She asserts four separate causes of action, all related to a disparity in her salary and the failure of the School Board to correct that disparity. Her law suit charges that the pay disparity resulted from the gender-motivated salaries of three male Central Office supervisors, Burl Mooney, Mark Mullins, and Mike Setser, as well as those of her male predecessor, Jimmy Smith, and her male replacement, Tony Robinson.[1]

The court denied partial motions to dismiss filed by the defendants, *Colley v. Dickenson Cty. Sch. Bd.*, No. 2:17CV00003, 2017 WL 4445985 (W.D. Va. Oct. 5, 2017), and thereafter the parties engaged in extensive discovery. The defendants have now filed motions for summary judgment, which have been briefed and argued and are ripe for decision.[2]

---

[1] Subject-matter jurisdiction of this court exists pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

[2] Two of the Board members, Susan Mullins and Rocky Barton, are represented separately from the other defendants, and have filed a separate joint Motion for Summary Judgment. Mullins and Barton allegedly were in favor of compensating Colley when she brought her claim to the attention of the Board. Pl.'s Mem. Opp'n Mots. Summ. J. Ex. K 8-9, ECF No. 96-11; *Id.* at Ex. I, Robinson Dep. 194, ECF No. 96-9. When referencing the defendants' filings, I will cite those on behalf of Mullins and Barton as "Defs. Mullins & Barton," and those filed on behalf of the other defendants simply as "Defs."

Summary judgment is appropriate when there is no genuine issue of material fact, given the parties' burdens of proof at trial. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). In determining whether the moving party has shown that there is no genuine issue of material fact, the court must assess the factual evidence and all inferences from such facts in the light most favorable to the non-moving party. *See Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for disposing of "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks and citations omitted).

## II. EQUAL PAY ACT CLAIM.

In Count One of her Amended Complaint, Colley alleges a violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), against the School Board. The EPA provides that

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than

the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex[.]

29 U.S.C. § 206(d)(1).

A plaintiff bringing a claim under the EPA is not required to present evidence of sex discrimination above and beyond a prima facie case. Proof of discriminatory intent is not part of the plaintiff's burden. *See Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 161-62 (4th Cir. 1992); *Brewster v. Barnes*, 788 F.2d 985, 991 (4th Cir. 1986). In order to establish a prima facie case, Colley must demonstrate that the School Board paid a higher wage to a male "for equal work on jobs requiring equal skill, effort, and responsibility, which jobs . . . all are performed under similar working conditions." *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018). Although Colley seeks to compare herself to several men, "an EPA plaintiff is not required to demonstrate that males, as a class, are paid higher wages than females, as a class, but only that there is a discrimination in pay against an employee with respect to one employee of the opposite sex." *Id.* at 122.

"The crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the

two jobs is identical. The inquiry then turns to whether the differing or additional tasks make the work substantially different." *Brewster*, 788 F.2d at 991 (citation omitted). "Congress chose the word 'equal' over the word 'comparable' in order to show that the jobs involved should be virtually identical, that is . . . very much alike or closely related to each other." *Wheatley v. Wicomico Cty.*, 390 F.3d 328, 333 (4th Cir. 2004) (internal quotation marks and citation omitted).

On the other hand, it is said that "[i]n interpreting the EPA, [e]qual means *substantially equal*." *Id.* at 332 (internal quotation marks and citations omitted). The standard does not depend on job classifications or titles, but on actual job requirements and performance. *See id.* at 332-33. "Granted, at a high level of abstraction these positions all require [the employees] to do the same thing — supervise, coordinate, and organize. But the EPA demands more than a comparison of job functions from a bird's eye view." *Id.*

Assuming that the evidence does establish a prima facie violation of the EPA, the burden of proof shifts to the employer to prove by a preponderance of the evidence that the pay disparity was due to (1) a seniority system, (2) a merit system, (3) a system pegging earnings to a quality or quantity of production, or (4) any factor other than sex. *Brewster*, 788 F.2d at 991-92. If the employer does not meet its burden of proof as to one or more these defenses, the jury must return a

verdict in favor of the plaintiff. *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 344 (4th Cir. 1994).

The School Board contends that it is entitled to summary judgment because Colley and male Central Office supervisors Mooney, Setser, and Mullins did not perform equal work. The School Board contends that Colley's specific job functions were not substantially equal to the other Central Office supervisors. Colley was the Supervisor of Instruction. Her essential job duties revolved around the school system's instructional programs, including curriculum planning and development, teacher evaluations, and textbook selection. Mooney was the Supervisor for Transportation and Maintenance. His responsibilities included supervision of maintenance employees and school bus drivers, planning bus routes, establishing custodial and security requirements for each school building, and overseeing all major repairs and construction projects. Setser was Supervisor of Compliance, Attendance and Alternative Education. He tracked attendance, handled discrimination and harassment complaints, alternative education programs, and appeared in court in truant and misbehaving student cases. Mullins was the Supervisor of Special Programs, such as testing, licensure, and overseeing federal and state programs. He was also the superintendent designee, standing in for the superintendent in her absence. While Setser's and Mullins' duties may have had

more relation to Colley's than Mooney's, the defendants contend that their central responsibilities in the school system substantially differed from those of Colley.

In response, Colley claims that all of the Central Office supervisors shared "a common core of tasks," which included reporting to the division superintendent, serving on committees, overseeing division programs, participating in hiring decisions, purchasing responsibilities, and communicating with parents and the School Board. Pl.'s Mem. Opp'n Mots. Summ. J. 28, ECF No. 96.

The School Board asserts that the Central Office supervisors were paid "based on a seniority system" in the form of a "central office supervisor salary scale." Defs.' Mem. Supp. Mot. Summ J. 12, ECF No. 92. Accordingly, it argues that the other supervisors "were paid more than [Colley] in accordance with their additional years of seniority," and Colley "simply never caught up" to the other supervisors because they "had four years ascending up the scale prior to [her] arrival." *Id.* at 12-13. At the time of Colley's retirement, the annual salaries in the Central Office, in ascending order of date of hire in that office, were as follows:

| Name | Gender | Central Office Start Date | Salary 7/31/15 |
|---|---|---|---|
| John Carpenter[3] | male | 5/1/2008 | $68,848 |

---

[3] Colley contends that Carpenter, as Business/Finance Director, was not comparable to her because he never held an educator's license and his employment contract called him a "director" and not a "supervisor," unlike other Central Office staff. Pl.'s Mem. Opp'n Mots. Summ. J. 9 n.4, ECF No. 96. However, the record indicates that the titles "supervisor" and "director" were used interchangeably. *Id.* at Ex. R, ECF No. 96-18 (use of "director" in organizational charts).

| Debra Colley | female | 7/9/2007 | $71,300 |
|---|---|---|---|
| Denechia Edwards | female | 8/1/2005 | $78,876 |
| Mike Setser | male | 12/1/2003 | $82,017 |
| Burl Mooney | male | 9/1/2003 | $83,637 |
| Mark Mullins | male | 8/1/2003 | $82,017 |

Pl.s' Mem. Opp'n Mots. Summ. J. Ex. M, ECF No. 96-13.

The School Board further contends that a comparison of Colley's salary at the time of her hire and those of Mooney, Mullins, and Setser demonstrates that she was treated in a substantially equal manner. Colley's starting salary was $59,056 and Mooney's starting salary was $59,293. Mullins' and Setser's starting salaries were $55,400 and $44,462 respectively. In response, Colley argues that the School Board cannot prove a valid affirmative defense, because they are required to establish that the alleged seniority system "*in fact* motivated the [School Board's] decision" to pay her less. *EEOC v. Md. Ins. Admin.*, 879 F.3d at 120 n.7. This burden "necessarily is a heavy one." *Id.*

Colley also contends that the alleged seniority system was ambiguous and inconsistently applied. In order to pass muster under the EPA, a pay system that relies on length of service "must be able to identify standards for measuring seniority which are systematically applied and observed." *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995). Superintendant Robinson was uncertain whether the alleged seniority system relied upon service in the Central Office or service with the Dickenson County school system. In her deposition, she first indicated that it

9

was years in the Central Office, Pl.'s Mem. Opp'n Mots. Summ. J. Ex. I, Robinson Dep. 104-05, ECF No. 96-9, but then testified that that she did not know, *Id.* at 105, 108.[4] In any event, Colley contends she had equivalent seniority. Colley had been a classroom teacher for 23 years, 16 of which were in Dickenson County, and for six years and a half years prior to her appointment as a Central Office supervisor, had been the program coordinator for the Southwest Virginia Education and Training Network, an organization providing student learning and teacher professional development by interactive television ("ITV"). In that position, she was responsible for the ITV curriculum and instruction and trained teachers in the region's school divisions, including Dickenson County.

Moreover, while Mooney, Mullins, and Setser all came to the Central Office in 2003 at approximately the same salary, in the 2006-2007 school year, Mullins and Setser got a larger percentage raise then Mooney. In turn, for the 2008-2009 school year, Mooney received a salary increase larger than Mullins and Setser, allegedly because of a "mistake in years and experience," *Id.* at 122, although no details of that mistake appear in the record and Mooney himself testified that he never requested a raise, Pl.'s Mem. Opp'n Mots. Summ. J. Ex. DD, Mooney Dep. 45, ECF No. 96-30. In contrast, Colley sought a raise from Superintendent Robinson in 2009 or 2010, but she was told that there was "a very difficult budget," and nothing

---

[4] Robinson did not become superintendent until March of 2009 and thus was not in office when Colley was hired.

was done.   Robinson Dep. 89, ECF No. 96-9.   In 2017, after Colley retired, Denechia Edwards, one of the Central Office supervisors, asked for an increase in her salary and it was made equal to that paid to Setser and Mullins.

 In addition, while no pay increases were given to anyone in the school years beginning in 2009 and ending in 2012, beginning in the 2012-2013 school year, the Central Office supervisors were all given the same percentage increase, thus magnifying the dollar disparity between Colley's salary and the highest male salary.[5]

Colley also presents evidence that there was in fact no meaningful salary scale, as contended by the School Board.  The so-called salary scale was simply "a list of what the current members of the staff made."  Colley Dep. 46, ECF No. 96-2.   In other words, "What was presented as a salary scale for central office supervisors never had distinctive steps, it was specific to the people holding those positions."  *Id*. at 50.

Colley also argues that she has established a prima facie case under the EPA because she was paid less than her male predecessor, Jimmy Smith.  *See* 29 C.F.R. § 1620.13(b)(2) ("[W]here an employee of one sex is hired or assigned to a

---

[5]  Colley's salary in the 2009-2010 school year was $66,056, and the highest male Central Office salary was $77,485, a difference of $11,429.  After three years of across-the-board equal percentage increases, Colley's last salary was $71,300, and the highest male salary at the time was $83,637, a difference of $12,337.  Pl.'s Mem. Opp'n Mots. Summ. J. Ex. M, ECF No. 96-13.

particular job to replace an employee of the opposite sex but receives a lower rate of pay than the person replaced, a prima facie violation of the EPA exists."); *Cty. of Washington v. Gunther*, 452 U.S. 161, 179 n.19 (1981) (noting that EPA "provides an action for sex-based wage discrimination by women who hold jobs not *currently* held by men.).

Smith was being paid $72,553 at the end of his tenure when he was replaced by Colley. Colley's starting salary was $59,056. The School Board contends that this differential between Colley and Smith was based solely upon the alleged seniority system, by which employees only progressed in salary based upon the length of time in their positions.

In addition to her predecessor, an EPA plaintiff may use her successor as a comparable. *Brinkley-Obu*, 36 F.3d at 348. After Colley retired, she was replaced in the same job by a male, Tony Robinson, who received a starting annual salary of $74,699, higher than Colley's final salary of $71,300, after eight years in her position. Robinson was a current Dickenson County school principal, and the School Board defends on the ground that he did not want to take the Central Office job if he was required to take a salary reduction.[6] This argument implicates the

---

[6] As explained by the Superintendent Robinson, "I don't think that Mr. Robinson said that he would like to keep his salary as much as that he could – it would be difficult for him to take a less salary . . . . and come to the Central Office. He was at the school, making this salary, coming to a central office – much more responsibility for less salary." Robinson Dep. 51, ECF No. 96-9.

"any other factor other than sex" defense permitted by 29 U.S.C. § 206(d)(1)(iv). This factor must have been one adopted for a legitimate business purpose. *EEOC v. J.C. Penney Co.*, 843 F.2d 249, 253 (6th Cir. 1988).

I find based upon the summary judgment record that Colley has failed to show sufficient evidence that she performed equal work compared to Mooney, Setser, or Mullins and thus has not established a prima facie case under the EPA as a matter of law as to those alleged comparables.  However, I do find that she has presented sufficient evidence to prove a prima facie case as to her predecessor Smith and her successor Robinson.  The plaintiff performed equal work as those persons but was paid a lesser salary.  The burden of proof being thus shifted to the School Board to prove one of the statutory defenses, I find that there are genuine issues of material fact as to those defenses precluding summary judgment for the School Board.  The jury must decide whether the alleged seniority system operated to insulate the School Board from paying Colley a comparable amount to that received by Smith  for performing the same job that she was hired to perform.

As to Colley's successor, the jury must determine whether Robinson's prior salary justified paying him a starting salary not comparable to that which Colley received when she started the same job.  Robinson was not *required* to transfer to this different job, where a retention of his former salary might have been justified. Nor was there evidence that Robinson was the only available qualified candidate

for Colley's job, thus leaving the School Board with no choice but to pay him the higher salary.

## III. TITLE IX CLAIM.

Colley asserts a discrimination claim in Count Two against the School Board under Title IX of the Educational Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), which provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." Claims of discrimination in employment under Title IX are evaluated borrowing from the framework of Title VII of the Civil Rights Act of 1964. *Preston v. Va. ex rel. New River Cmty. Coll.*, 31 F.3d 203, 207 (4th Cir. 1994).

Absent direct evidence of discriminatory intent, and utilizing the familiar procedure announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), the plaintiff may avoid summary judgment by choosing to put forth a prima facie case of discrimination by establishing that: (1) she is a member of a protected class; (2) she "suffered an adverse employment action"; (3) her job performance was satisfactory; and (4) the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." *Adams v. Trs. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011). The fourth element is met if "similarly-situated employees outside the protected class

received more favorable treatment." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).  Indeed, so-called comparator evidence is "especially relevant to a showing of pretext," even though it may not be the final answer in the case.  *Laing v. Fed. Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013) (internal quotation marks omitted).

Once the plaintiff establishes her prima facie case, the defendant must respond with evidence that they acted with a legitimate, non-discriminatory reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  If the defendants make this showing, the plaintiff must then present evidence to prove that the defendants' articulated reason was pretext for unlawful discrimination.  *Id.* at 507-08. However, the ultimate burden of proving intentional discrimination remains with the plaintiff.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).[7]

For the reasons as explained in connection with the plaintiff's EPA claim, I find that Colley has shown a successful prima facie case of discrimination and has rebutted the School Board's articulated reason for disparate treatment. Accordingly, I find there are issues of genuine material fact as to whether the

---

[7] A plaintiff is not required to rely upon the *McDonald Douglas* burden-shifting process, and may survive summary judgment by showing that there is a genuine issue of material fact as to whether the employer's action was motivated at least in part by an unlawful factor, even if it was not the sole factor.  *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 317-19 (4th Cir. 2005) (explaining summary judgment burden in mixed-motive discrimination cases).  In the present case, Colley relies upon both methods, but in light of my decision, it makes no difference.

School Board engaged in unlawful gender discrimination with respect to Colley's salary.  Accordingly, I will deny summary judgment as to this claim.

## IV. EQUAL PROTECTION CLAIM.

In Count Three, Colley alleges a constitutional claim against all of the defendants under 42 U.S.C. § 1983, based upon the Equal Protection Clause of the Fourteenth Amendment.[8]  It is established that "the equal protection clause confers on a public employee a federal constitutional right to be free from gender discrimination." *Beardsley v. Webb*, 30 F.3d 524, 530 (4th Cir. 1994).  To prove her claim, Colley must establish that (1) the defendants acted under color of state law; (2) that she has been treated differently from others with whom she is similarly situated; and (3) that the unequal treatment was the result of intentional or purposeful discrimination.  *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001).

Section 1983 claims involving employee discrimination may be considered using the *McDonnell Douglas* evidence-shifting process employed under Title VII, including where, as here, there is no direct evidence of intentional gender discrimination.  *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004).  Even assuming that as to the individual defendants the plaintiff has met her burden under

---

[8]  "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

the *McDonnell Douglas* framework, I find that the § 1983 claim against them is barred by their qualified immunity.

Persons sued in their individual capacity under § 1983 are clothed with qualified immunity. "Generally, qualified immunity operates to protect . . . government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions." *Raub v. Campbell*, 785 F.3d 876, 880-81 (4th Cir. 2015). The protection extends to "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 881 (citation omitted). As courts have repeated emphasized, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (citations omitted).

Qualified immunity analysis typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation. However, the court need not reach both prongs of the analysis. Rather, it may address these two questions in "the order . . . that will best facilitate the fair and efficient disposition of each case." *Id.* (citation omitted).

In determining whether the right was clearly established, "courts must not define clearly established law at a high level of generality," but must instead "examine whether the violative nature of [the defendants'] *particular* conduct is

clearly established . . . in light of the specific context of the case, not as a broad general proposition." *E.W. v. Dolgos*, 884 F.3d 172, 185 (4th Cir. 2018) (internal quotation marks and citations omitted).

I find that the individual defendants — the Board members and Superintendent Robinson — are entitled to qualified immunity and judgment must be entered in their favor.[9] While there is a strong argument that no constitutional right has been shown by the plaintiff, I find that any such constitutional right, even if proved, was not clearly established under the specific factual circumstances of this case. The case law from the Supreme Court and the Fourth Circuit provides notice of whether a right is clearly established. *Hill v. Crum*, 727 F.3d 312, 322 (4th Cir. 2013). While there need not be "a case on all fours with the facts at hand," *Hunter v. Town of Mocksville,* 789 F.3d 389, 401 (4th Cir. 2015), I do not find that any pre-existing precedent made apparent to these defendants that their conduct violated constitutional law. The undisputed facts are that the Board members did not know of the disparity in salaries, although they annually approved a total figure for those salaries. Superintendent Robinson understood that salaries were based on the length of service, be it service in the Central Office or with the

---

[9] It should be noted that while defendants Mullins and Barton raised qualified immunity in their joint answer, Mullins & Barton Answer ¶ 34, ECF No. 31, they did not argue it in their Motion for Summary Judgment. However, particularly since it was properly presented by their codefendants and the plaintiff thus suffered no prejudice, I will consider it sua sponte as to these defendants. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305-06 (4th Cir. 2006).

school system.  The plaintiff never brought to the defendants' attention that she was the victim of gender discrimination.  When she asked for a raise from Superintendent Robinson, it was based on her concern that some school principals were making more money than the supervisors in the Central Office.  Pl.'s Mem. Opp'n Mots. Summ. J. Ex. C 4, ECF No. 96-3.

The School Board as a governmental unit is also sued by Colley under § 1983, based upon the claimed violation of the Equal Protection Clause. Respondeat superior may not serve as a basis for imposing municipal liability under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  "It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (internal quotation marks and citations omitted).

To prevail on a municipal liability claim under § 1983, a plaintiff  "must point to a persistent and widespread practice of municipal officials, the duration and frequent of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference."  *Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014) (internal quotation marks, alteration, and citation omitted).

While Colley asserts in her brief that the Dickenson County Public Schools "had a culture of protecting male employees and rewarding them with supervisor

positions and generous salaries," Pl.'s Mem. Opp'n Mots. Summ. J. 35, ECF No. 96, this conclusory allegation is not supported by the facts of record. Of the five educators serving in the Central Office during Colley's employment, three were men and two were women and the chief administrator of the school system, Superintendent Robinson, was a woman.

Even though the evidence shows that the Board members did not know of salary disparity in the Central Office, and were surprised to learn of it when Colley brought it to their attention, Colley argues that they had constructive knowledge of it because they were charged by state law with operating the public school system in Dickenson County.[10] But what they would have learned, had they inquired, was that those supervisors who had served the longest, received more money, based upon periodic annual increases. While there were serious inconsistencies in the system as I have previously described, they are not the requisite "widespread or flagrant violations" as to give rise to municipal liability under § 1983. *Owens*, 767 F.3d at 403.[11] Accordingly, I find that Colley has failed to show a genuine issue of material fact as to the School Board's liability under §1983.

---

[10] Colley also speculates that the Board members might have learned of the disparity in Central Office salaries because those salaries were published in a local newspaper. But Colley herself admits that she did not know of the disparity until she decided to retire, eight years after she began her job.

[11] The School Board also pled "governmental immunity," Answer ¶ 24, ECF No. 15, although it did not raise it in its Motion for Summary Judgment. Eleventh

The defendants' motions for summary judgment as to the § 1983 claim will be granted.

## V. Breach of Contract Claim.

Colley asserts in Count Four a pendant Virginia common law breach of contract claim, alleging that the School Board breached an agreement to compensate her for her monetary loss on account of her salary disparity.

In May of 2015, following Colley's appearance before the Board to present her salary concerns, she met with Superintendent Robinson and Reba McCowan, the Clerk of the Board, to discuss a solution. Robinson inquired if all she wanted was her retirement corrected. Colley replied, "I cannot tell you that that's the only thing I want, but that's certainly my number one priority." Colley Dep. 87, ECF No. 96-2. She stated "over and over again" that "the most important thing to me is the correction of the VRS [Virginia Retirement System] because that's something that's going to affect me from here until I die." *Id*. at 90. She could not recall if she had told Robinson that she "would accept payment of the VRS and that that would be the end of it." *Id.*

---

Amendment immunity is not a "true limit" on the court's subject-matter jurisdiction, *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996), and because it has not been argued, I need not decide whether it insulates Virginia's local school boards from suit under § 1983. There are strong augments that it does not. *Drewrey v. Portsmouth City Sch. Bd.*, 264 F. Supp. 3d 724, 728-731 (E.D. Va. 2017).

After that meeting, the clerk produced written calculations for two possible options. One option increased the last three years of Colley's salary, which would have had the effect of enhancing her VRS retirement benefits because they were based on an employee's three highest salary years. The other option provided for a payment covering all eight years of employment. The retirement option would have required a payment to Cooley of $37,754, while the eight-year option would have cost $90,477.43. Pl.'s Mem. Opp'n Mots. Summ. J. Ex. GG, ECF No. 96-33.

After the Board's May 2015 meeting, Scott Mullins, the School Board's lawyer, called Cooley and told her that the Board had directed him "to make this right for Deb Colley." Colley Dep. 92, 98, ECF No. 96-2. Mullin told her that he would send her a written proposal from the Board, which would "contain some legal oo-blah-do" and "will admit no fault, no blame," but he never did. *Id.* at 92-93. Mullins had a vacation planned, and he did not meet with her until July, before the July Board meeting. They went over the clerk's written calculations and the two options, and Mullins told her, "I can't tell you exactly what the offer will contain," but that "it would be likely more – closer to this number, indicating the lower number, than this number." *Id.* at 96. Colley testified that she replied, "I am willing to accept anything in that range. And that's where we left that meeting." *Id.* After the Board's July meeting, Mullins called Colley and told her that "the Board wasn't going to do anything." *Id.* at 209.

For her claim, Colley contends that the Board, through its lawyer, made a binding contractual offer to compensate her and that she "accepted the range of compensation offered for the underpayment." Am. Compl. ¶ 73, ECF 63. In its Motion for Summary Judgment, the School Board asserts that the undisputed evidence establishes that no binding offer was ever made to Colley.

An offer "identifies the bargained for exchange . . . and creates a power of acceptance in the offeree." *Chang v. First Colonial Sav. Bank*, 410 S.E.2d 928, 930-31 (Va. 1991). A valid offer constitutes an expression by the offeror to "certain definite terms." *Lacey v. Cardwell*, 217 S.E.2d 835, 843 (Va. 1975). "A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." Restatement (Second) of Contracts § 26.

It is clear from Colley's own testimony that she knew that no definite offer had been made and any such offer required a decision by the Board. The Board may have decided to offer an amount below the range between the two options being considered, although "closer" to the lower number. The Board may have included legal language in the expected written agreement that may have been unacceptable to Colley. I find that the School Board is entitled to judgment as a matter of law on its contract claim.

## VI. STATUTE OF LIMITATIONS.

The School Board argues that any damages occasioned by its alleged violations of the EPA or Title IX are limited by the period of limitations applicable to those statutes and seeks summary judgment in its favor as to any such excess damages. Colley's Title IV claim is governed by Virginia's two-year period of limitations for personal injury causes of action. *Wilmink v. Kanawha Cty. Bd. of Educ.*, 214 F. App'x 294, 295-96 (4th Cir. 2007) (unpublished). An action under the EPA is subject to a two-year period of limitations, or three years if the violation is willful. 29 U.S.C. § 255(a). The School Board does not contend that either of Colley's remaining causes of action is barred by the statute of limitations, but only that she cannot recover any damages prior to two years before the filing of her action on March 7, 2017, or at most, three years prior thereto if she proves a willful violation of the EPA. In other words, the School Board concedes that the lawsuit was timely filed, but that the applicable statutes of limitation constrain the extent of any damages awarded.

The School Board did not assert a statute of limitations defense in its Answer and the first mention of this affirmative defense came in its Motion for Summary Judgment. Accordingly, Colley contends that the defense is waived. However, an affirmative defense is not automatically waived when first raised in a pretrial dispositive motion, "but requires a showing of prejudice or unfair

surprise." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999). This statute of limitations defense was raised and argued by the School Board's codefendants. Mullins & Barton Answer ¶ 32, ECF No. 31; Mullins & Barton Br. Supp. Mot. Summ. J. 15, ECF No. 90. Moreover, Colley's counsel had the opportunity to present oral argument on the issue, and did so. The issue is entirely one of law, and accordingly the fact that discovery is closed cannot affect the outcome of this defense. There thus has been no showing of prejudice or surprise.

Accordingly, I find that the statute of limitations defense has not been waived by the School Board.

On the merits, I agree with the School Board that in an employment action involving an alleged continuous and systemic violation, such as here, the statute of limitations constrains the plaintiff from seeking compensatory damages incurred beyond the reach of that period. *See Nealon v. Stone*, 958 F.2d 584, 591 n.5 (4th Cir. 1992). In *Nealon*, the plaintiff, a female federal employee, claimed that the government had made a discriminatory initial classification decision as to her salary grade back in 1981, adversely affecting her pay thereafter. She did not file suit until 1989. The district court dismissed her EPA claim as barred by the statute of limitations but on appeal the Fourth Circuit found that she was entitled to equitable tolling of the statute. The court noted that "Nealon is limited, however,

to recovering only those damages that accrued during the three years prior to filing suit under section 255(a) of the EPA." *Id.*; *see also Brewster v. Barnes,* 788 F.2d 985, 993 (4th Cir. 1986) (holding that where plaintiff filed EPA suit on April 16, 1980, she was entitled to recover back pay only from April 16, 1978, because of the two-year statute of limitations, even though her salary disparity started July 1, 1977); *Ghayyada v. Rector & Visitors of the Univ. of Va.*, No. 3:11-cv-00037, 2011 WL 4024799, at *7 (W.D. Va. Sept. 12, 2011) (holding that while continuing discrimination theory applies to EPA claims, "a plaintiff is limited only to those damages that accrued during the two- or three-year period prior to filing suit."); *Vereen v. Woodland Hills Sch. Dist.*, No. CV-06-462, 2008 WL 794451, at *23 (W.D. Pa. Mar. 24, 2008) (holding that "a plaintiff's recovery under the Equal Pay Act is limited to damages resulting from unequal pay within the applicable limitations period.").

This principle is also followed in other civil actions involving continuing violations. For example, in *Hanover Shoe, Inc. v. United Shoe Mach. Corp.,* 392 U.S. 481, 495 (1968), an antitrust case, the Court held that the plaintiff was entitled to damages under "the greatest retrospective reach permitted under the applicable statute of limitations." In a § 1983 case, "[a] continuing violation extends the period of time allowed to file the original complaint — *i.e.* toll the running of the limitations period — but does not extend the period for which plaintiff may

recover damages." *Dupree v. Hous. Auth. of Kansas City,* No. 89-2244-V, 1991 WL 12819, at *6 (D. Kan. Jan. 11, 1991).

The rational for the application of the statute of limitations to limit damages, even if it does not bar the cause of action itself, is based upon the purposes of limitations. They require plaintiffs to bring actions before the facts are stale and difficult to determine, and to allow defendants justifiable repose. "To allow damages for the entire period . . . would frustrate both of these purposes." *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997)

I will grant the School Board's motion, limiting the extent of damages recoverable.[12]

## VII. CONCLUSION.

For the reasons stated, it is **ORDERED** as follows:

1. The Motion for Summary Judgment by Rocky Barton and Susan Mullins, ECF No. 89, is GRANTED. The Clerk is directed to terminate these defendants as parties to this action; and

2. The Motion for Summary Judgment on Behalf of Defendants Dickenson County School Board, Haydee Robinson, John Skeen, Don Raines, and R.E.

---

[12] The School Board also seeks summary judgment that it did not willfully violate the EPA, thus limiting its potential damages. A willful violation occurs when an employer knew, or showed reckless disregard for the fact, that its conduct was prohibited, and was not merely negligent. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). I find under the present record that the jury must determine whether an EPA violation, if it occurred, was willful.

Nickles, ECF No. 91, is GRANTED IN PART AND DENIED IN PART; It is

GRANTED as to Count Three and Count Four. It is DENIED as Count One and

Count Two. It is GRANTED IN PART AND DENIED IN PART as to damages

sought under Count One and Count Two, as explained herein. The Clerk is

directed to terminate defendants Haydee Robinson, John Skeen, Don Raines, and

R.E. Nickles as parties to this action.

ENTER:  September 6, 2018

/s/  *James P. Jones*
United States District Judge